**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ALLSTATE INSURANCE COMPANY *as subrogee*
*of Thomas Lothridge*,

Plaintiff,

- v -

Civ. No. 8:07-CV-1011
(RFT)[1]

ALBERT GONYO,[2]

Defendant.

**APPEARANCES:**                                    **OF COUNSEL:**

COZEN, O'CONNOR LAW FIRM               DANIEL J. LUCCARO, ESQ.
*Attorney for Plaintiff*
1900 Market Street, 3rd Floor
Philadelphia, Pennsylania 19103

OFFICE OF DANIEL W. COFFEY               DANIEL W. COFFEY, ESQ.
*Attorney for Defendant*
119 Washington Avenue, 2nd Floor
Albany, New York 12210

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**MEMORANDUM DECISION and ORDER**</u>

This case is a subrogation of a fire claim.  Dkt. No. 1, Compl.  Pending before this Court is

Defendant Gonyo's Motion for Summary Judgment.  Dkt. Nos. 44-47.[3]  The Plaintiff Insurance

---

[1] On July 25, 2008, the parties filed a Notice to Consent to the Exercise of Jurisdiction by a United States Magistrate Judge, Dkt. No. 34, and, on July 30, 2008, the Honorable Lawrence E. Kahn, Senior United States District Judge, referred and reassigned this case to this Court, Dkt. No. 35.

[2] Initially, Charles Stone was listed as a Defendant as well.  On August 12, 2008, the parties filed a Stipulation of Discontinuance as to Mr. Stone,  Dkt. No. 37, which was approved by this Court, Dkt. No. 38.

[3] Gonyo's Motion for Summary is comprised of the following:
Dkt. No. 44      Notice of Motion
Dkt. No. 45      Daniel W. Coffey, Esq., Aff., dated Oct. 3, 2008
Dkt. No. 46      Def.'s Statement of Material Facts
Dkt. No. 47      Def.'s Mem. of Law, dated Oct. 3, 2008, and Exs. A-M.

Company, Allstate Insurance Company,[4] opposes this Motion for Summary Judgment.  Dkt. Nos. 48-50.[5]  Gonyo filed a Reply to Lothridge's Opposition.  Dkt. No. 51, Daniel W. Coffey, Esq., Aff., dated Oct. 24, 2008.  For the reasons that follow, Gonyo's Motion for Summary Judgement is **denied**.

## I. HISTORY[6]

In 1977, Thomas Lothridge and his brother built a cabin at Bida Road, New Berlin, New York.  Dkt. Nos. 47, Ex. F, & 48-2 Ex. B, Thomas Lothridge Dep., dated Mar. 26, 2008, at pp. 22-23.  Around 1980 or 1981, Lothridge installed a stove which served as the Cabin's sole heating source.  *Id*. at p. 25; Dkt. Nos. 47, Ex. E, & 48-2, Ex.C, Charles Stone Dep., dated Apr. 17, 2008, at p. 16.  In addition to his own personal use, over the years, beginning approximately 1990, Lothridge rented the Cabin to hunters.  Initially, renters paid $10.00 per day per person, however, at some point, the rent rose to $15 per day per person.  Lothridge Dep. at pp. 11-12, & 15-16.

Since the early 1990s, Gonyo and others rented the Cabin in order to pursue their hunting interests in the woods of Chenango County.  Dkt. Nos. 47, Ex. D, & 48-2, Ex. D, Albert Gonyo

---

[4]  The subrogee is Thomas Lothridge.

[5]  Allstate's Opposition to the Motion for Summary Judgment is comprised of the following:
Dkt. No. 48      Daniel J. Luccaro, Esq., Aff., dated Oct. 20, 2008, Exs. A-I
Dkt. No. 49      Pl.'s Mem. of law, dated Oct. 20, 2008
Dkt. No. 50      Pl.'s Statement of Material Facts

[6]  This District's Local Rules require the parties to file a Statement of Material Facts and "each fact listed shall set forth a specific citation to the record where the fact is established."  N.D.N.Y.L.R. 7.1(a)(3).  Defendant has filed a 7.1 Statement, however, that document fails to provide the relevant citations to the record.  *See* Dkt. No. 46, Def.'s 7.1 Statement.  Nevertheless, the Defendant's Counsel, Daniel Coffey, Esq., provided in his Affidavit complete citations for each of the facts cited therein, which fact recitation practically mirrors the Defendant's 7.1 Statement.  Dkt. No. 45.  Although Defendant may not have technically complied with the Local Rules, he has nonetheless provided the Court with all of the requisite record references and, accordingly, we will accept his filing as complete.
In filing its 7.1 Statement, Plaintiff has fully complied with our Local Rules.  For the most part, Plaintiff agrees with the majority of the facts cited by Defendants.  *See* Dkt. No. 50, Pl.'s 7.1 Statement, at ¶¶ 2-20.  In light of that agreement, we will only cite to Defendant's 7.1 Statement and where they disagree, we will provide citations to both filings.

Dep., dated Apr. 17, 2008, at p. 12.  In November, 2005, Gonyo, Charles Stone, and two other hunters verbally agreed with Lothridge to rent the Cabin at the $15 per day per person rate.  Compl. at ¶ 8; Gonyo Dep. at pp. 13-14.  Approximately ten days prior to Gonyo's and Stone's arrival at the Cabin, Lothridge had used the Cabin.  Lothridge Dep. at pp. 65 & 70.  Lothridge kept two tools boxes at the structure, one which was usually kept near the front door and the second kept mostly in the living room area in some proximity to the stove, sometimes underneath a coffee table and other times near a wall or the stove.  Gonyo Dep. at p. 20-21; Lothridge Dep. at p. 70-73.[7]  These two tool chests were plastic, and Lothridge recalled that he could have used one of the tool chests on his last visit at the Cabin and could have, and most likely did, left it in close propinquity to the stove.  Lothridge Dep. at p. 70.

Gonyo and Stone arrived at the Cabin on November 14, 2005.  Prior to hunting, Gonyo lit a fire in the stove, with Stone assisting solely by bringing in wood.  Gonyo Dep. at p. 19.  After the stove was fully lit, Gonyo and Stone left the cabin for approximately forty-five (45) minutes to an hour to scout for deer.  *Id.* at p. 19-25.  Upon their return to Cabin, they observed black smoke billowing from the Cabin but did not see any flames.  *Id.* at p. 26.

The first responders to the fire were the New Berlin Fire Department, which included the Fire Chief, George Hanslmaier, who was a Level One Certified Fire Investigator by New York State. Dkt. No. 47, Ex. G, George W. Hanslmaier Dep., dated June 24, 2008, at pp. 9-11.  After the fire was extinguished, and as the highest ranking official at the fire scene, Hanslmaier conducted a fire scene origin and cause investigation, of which Gonyo and Stone witnessed.  Gonyo Dep. at p. 32;

---

[7] When questioned about the location of the tool chest during his deposition, Charles Stone did not recall the tool chest being located to the right of the stove.  Dkt. No. 47, Ex. E, Charles G. Stone Dep., dated Apr. 17, 2008, at p. 26.  On previous occasions, Stone has seen the tool chest between the stove and the bookcase, or by the stove, or over by the old fireplace, or tucked  up against the corner, or near a chair being used as a footrest.  *Id*. at p. 27.

Hanslmaier Dep. at pp. 18-21.  Hanslmaier opined that the fire began in the chimney due to the chimney becoming too hot and igniting the roof.  Hanslmaier Dep. at pp. 21, 23, 24, 25, & 31; Dkt. No. 47, Ex. H, New Berlin Fire Report.  Further damage was caused by "drop down" debris from the roof.  Later that evening, Lothridge arrived at the Cabin and spoke with Gonyo and Stone.  The following day, Lothridge, Gonyo, and Stone visited Lothridge's insurance agent, in part, to determine if their property loss would be covered.  Consequently, Allstate was notified of the fire.

Allstate representative Robert Koban retained Dennis A. Ware to investigate the cause and origin of the fire.  Dkt. Nos. 47, Ex. J, & 48-2, Ex. F, Robert Koban Dep., dated Mar. 26, 2008, at p. 9.  On November 17, 2005, Lothridge, Koban, and Ware inspected the fire scene.  *Id*. at p. 12.  During the inspection, Ware observed the melted outline of purportedly the remains of the plastic tool chest, approximately six inches from the Stove.  Dkt. No. 47, Ex. I, Dennis A. Ware Report, at pp. 6 & 7.  Based upon his investigation, Ware concluded that the fire originated in the northeast corner of the living room by the stove and attributes the ignition of the fire "to the failure of the persons who were using the wood stove to maintain proper clearance to combustibles (the plastic toolbox) located close to the wood stove."  *Id*. at p. 7.  Immediately thereafter, Ware reported his conclusions to Allstate.

Gonyo claims that, before lighting the stove, he conducted a quick visual inspection of the area surrounding the stove and observed nothing.  Gonyo Dep. at pp. 20-21.  He further asserts that if a plastic tool chest had been within two to three feet of the stove, he would have removed it inasmuch as he, based upon his experiences with his own wood-burning stove, recognized that a plastic tool chest in close proximity to the stove, which is radiating heat, would be a fire hazard.  *Id*. at pp. 20-23.

Because Gonyo and Stone sustained property loss as well, they submitted claims to their respective insurance companies. Several days after the fire, Gonyo and Stone returned to the Cabin and took photographs of the fire scene. Stone Dep. at p. 38. Presumably, upon receiving Ware's report, on November 17, 2005, Allstate had knowledge that Gonyo was suspected of causing the fire. Def.'s 7.1 Statement at ¶ 18. However, five months later, on April 12, 2006, Allstate's attorney sent a letter to Gonyo advising him that the fire was the result of his negligence. Dkt. No. 47, Ex. K, Allstate Lt., dated Apr. 12, 2006. Insurance adjuster Koban avers that prior to the attorney's letter, he unsuccessfully attempted to contact Gonyo and Stone by telephone because he did not have addresses for them. Koban Dep. at p. 15. Gonyo submitted the April 12th letter to his insurance carrier, MetLife, who responded to Allstate on April 18, 2006. Dkt. No. 48-2, Ex. I, MetLife Lt., dated Apr. 18, 2006.

Sometime between November 17, 2005 and June 19, 2006, the Cabin was demolished by Jerry Knapp Construction (Knapp). On June 19, 2006, Knapp faxed his invoice for the demolition to Allstate, which was paid on July 3, 2006. However, the invoice does not reflect the date that the demolition occurred. Dkt. No. 48-2, Ex. H., Jerry Knapp Report.

Based upon Lothridge's claims, Allstate paid their insured the sum of $ 171,693.13, Dkt. No. 47, Ex. C, Pl.'s Ans. to Interrog. at ¶¶ 21 & 22,[8] and pursuant to the terms of Lothridge's insurance policy, common law principles of legal, and equitable subrogation, Allstate is subrogated to Lothridge's rights with respect to any claims against Gonyo, *id.* at ¶ 15.

Gonyo seeks summary judgment on two discrete grounds: (1) Allstate fails to state a cause of action in negligence insofar as Gonyo did not owe Lothridge any duty; and (2) Allstate failed to

---

[8] However, the Complaint indicates that the amount paid Lothridge was $168,194.23. Compl. at ¶ 14.

give him prompt notification of his potential liability and to preserve the fire scene so as to afford

Gonyo an opportunity to inspect the fire scene to determine the fire's origin.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter

of law." The moving party bears the burden to demonstrate through "pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no

genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on

the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has,

in accordance with local court rules, served a concise statement of the material facts as to which it

contends there exist no genuine issues to be tried, those facts will be deemed admitted unless

properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d

Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts

showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of

the facts submitted by the movant. FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282,

287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a

motion for summary judgment when the moving party has set out a documentary case."); *Rexnord*

*Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are

"more than mere conclusory allegations subject to disregard . . . they are specific and detailed

allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B.  Negligence

Allstate claims that the fire and the resulting damages were the direct and proximate results of negligence on the part of Gonyo.  Gonyo is accused of lighting a fire in the stove and then leaving the Cabin.  The radiant heat from the stove ignited a nearby plastic tool chest, which Allstate asserts is the origin of the fire that consumed the Cabin and caused substantial damages to both real and personal property.  Among other things, it is alleged that Gonyo failed to ensure that all combustible materials were clear from the Stove prior to leaving the property.  *See* Dkt. No. 47, Ex. C, Pl.'s Ans. to Interrog. at ¶¶ 3-5.

In order to state a cause of action sounding in negligence, a plaintiff must show that (1) the defendant owed the plaintiff a duty of reasonable care; (2) the defendant breached that duty; and (3) the breach proximately caused the plaintiff's injuries. *Williams v. Utica College of Syracuse Univ.*,

453 F.3d 112, 116 (2d Cir. 2006) (citing, *inter alia*, *Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (citing *Williams v. Utica College of Syracuse Univ.*, 453 F.3d at 116). The New York Jury Pattern Instructions, citing several New York State Court of Appeals cases, distills the rule of negligence to the following succinct statement:

> Negligence is lack of ordinary care. It is a failure to use that degree of care that a reasonably prudent person would have used under the same circumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances.

1A NEW YORK PATTERN JURY INSTRUCTIONS PJI 2:10.

In order to prevail on a theory of negligence, a plaintiff must show that the defendant owed a duty of care specifically to him, and that there was a breach of that duty. *Gonzalez v. Caballero*, 752 F. Supp. 2d at 467. A duty of care by a tortfeasor is elemental to any recovery under negligence. *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (N.Y. Ct. App. 1994). "The risk reasonably to be perceived defines the duty to be obeyed, and [the] risk imports relations." *Id.* (quoting *Havas v. Victory Paper Strock Co.*, 49 N.Y.2d 381, 386 (N.Y. Ct. App. 1980) & *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 344 (N.Y. Ct. App. 1928)). Stated another way, the duty of care is the same for all, to exercise reasonable care under all of the circumstances of a particular case. *Bethel v. New York City Transit Auth.*, 92 N.Y.2d 348 (N.Y. Ct. App. 1998).

The existence and scope of a duty is a question of law "requiring courts to balance sometimes competing public policy considerations." *Espinal v. Melville Snow Contractors, Inc.*, 98 N.Y.2d 136 (N.Y. Ct. App. 2002). In establishing the duty in a particular case, courts should balance factors such as, *inter alia*, "the reasonable expectation of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and

reparations allocations, and public policies affecting the expansion or limitation of new channels of liability." *Palka v. Servicemaster Mgmt. Servs. Corp*., 83 N.Y.2d at 586; *see also Peralta v. Henriquez*, 100 N.Y.2d 139, 145 (N.Y. Ct. App. 2003) ("Judicial recognition of a duty of care must be based upon an assessment of its efficacy in promoting a social benefit as against its costs and burdens."). On the other hand, a breach of that duty is a question of fact to be resolved by the jury. *Williams v. Utica College of Syracuse Univ*., 453 F.3d at 118.

As to the first element, Gonyo posits that he had no duty, and in particular, owed no duty to Lothridge. To be more specific, Gonyo contends that he had no legal duty to Lothridge to look for dangerous circumstances that Lothridge and possibly others may have left in the Cabin. The Court declines to accept Gonyo's postulation and, conversely, finds that Gonyo indeed had a duty as any other occupier of property to exercise reasonable care under the circumstances and that duty may include being aware of the surroundings and not creating a hazard. *Bethel v. New York City of Transit Auth*., 92 N.Y.2d 348; *Scurti v. City of New York*, 40 N.Y.2d 433, 442 (N.Y. Ct. App. 1976) (noting that the duty turns on the exercise of reasonable care under the circumstances). A landowner, and in many respects the tenant or occupier, in order to act as a reasonable person, must maintain the property in a "reasonably safe condition in view of all of the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk." *Peralta v. Henriquez*, 100 N.Y.2d at 144 (quoting *Basso v. Miller*, 40 N.Y.2d at 246); *see also Kellman v. 45 Tiemann Assoc., Inc*., 213 A.D.2d 151, 154 (N.Y. App. Div. 1st Dep't 1995) ("Imposed on owners and occupiers [is] a single duty of reasonable care in all circumstances." (quoting *Basso v. Miller*, 40 N.Y.2d 233, 240 (N.Y. Ct. App. 1976)).

Tenants, even for brief stays, have a duty not to bring harm to the property or to others

considering the forseeability of the harm.  Under our facts, Gonyo had a responsibility not to bring injury to the property under the prevailing circumstances.  That duty would include reasonably perceiving the risk of a danger that may have been presented and acting reasonably under those circumstances.  The danger purportedly at hand was that the stove's radiant heat was intense enough to ignite a plastic item which may have been in very close proximity.  Contrary to his current position, Gonyo has previously acknowledged that there may have been a duty for him to have done something if the plastic tool chest was in the vicinity of the hot stove as claimed by the Plaintiff. Gonyo Dep. at p. 43.

During his deposition, Gonyo, who is a volunteer fireman and also the owner of a wood-burning stove, understood the impact of radiant heat.  Gonyo Dep. at p. 17.  Regarding his own wood burning stove, he did not place items within a two to three feet radius of his stove.  *Id*. at p. 12.[9]  In terms of the Cabin and the plastic tool chest, Gonyo testified as follows:

> Q:   If you had observed a tool chest there [located near the stove], would you have moved it before starting the fire?
> A:   Of course.
> Q:   Okay, why is that?
> A:   Well, it's too close to the stove.
> Q:   Okay.  You've got some experience of firefighting.  Would you agree that that tool chest could ignite . . . from the radiant heat from the stove?
> A:   I doubt it.  It would melt.  It would melt before it caught on fire.

*Id*. at pp. 22-23.

Later in the deposition, Gonyo continued:

---

[9]  The questioning and testimony reads as follows:
Q:   Do you when you use the wood-burning stove in your home make sure that it's clear of any combustible material around it?
A:   Yes.
Q:   And do you have a particular distance you keep things?
A:   Not a set distance.  Usually two to three feet away.
Q:   And why is that?
A:   Just prevent fires.
Gonyo Dep. at p. 12.

Q:      Am I correct, sir, that you would not have placed a toolbox as close to the
        stove as its shown in the photograph that you were shown?
A:      No, I would not.
Q:      Okay.  And why is that, sir?
A:      It's a fire hazard.
Q:      Okay.  Would you agree with me that whoever did place it there, assuming
        it was placed there at all, did so improperly?
A:      Yes.

****

Q:      Would you agree if you were the person who lit the fire in the wood-burning
        stove, if there was a tool chest within that vicinity it would be your
        responsibility to move it before lighting the fire?
A:      I would have moved it if it was there.
Q:      Again, because you're aware that it's potentially a fire hazard?
A:      Correct.

*Id*. at pp. 41 & 43.[10]

The above testimony confirms that if a plastic tool chest, or nearly any other combustible item, is located within a relatively close proximity to radiant heat emanating from a wood-burn stove, a danger would be present.  Gonyo concurs that placing a plastic tool box near a stove would have been improper, but the danger would not have existed or even been perceived until the stove was lit, which he admits doing.  Even if the tool chest was placed next to the stove by Lothridge, the danger of a fire and the ensuing harm or injury would not have been imminent without the next act, lighting the fire.  It is at that moment that the person in control of the real property has a duty to act as a reasonable person under the circumstances, and as Gonyo acknowledged, he, or a reasonable person, would have moved the fire hazard.  Accordingly, we find, as a matter of law that Gonyo had a duty to perceive the risks at hand that were apparent.

Even though the Court has found that Gonyo had a duty, there are material factual disputes as to whether he breached that duty.  Allstate contends that Gonyo should have seen the tool chest

---

[10] During Stone's deposition, he also acknowledged that they owed some responsibility for their conduct while at the Cabin: Q: Would you agree that when you were at the house you were responsible for the house?  A: Yes.  Dkt. No. 48-2, Stone Dep., Apr. 17, 2008, at p. 18.

since it was approximately six inches from the stove and, by failing to either see the chest or

ignoring it, Gonyo breached his duty.  However, Gonyo avers that he did not see the tool chest and

infers that it was not reasonable, under the circumstances, for him to have seen the tool chest.  *Id*.

at pp. 20-23, & 40.  Supporting Gonyo's averment is Stone's sworn statement that he does not

"recall seeing the tool chest or the tool chest in the vicinity of the bookcase or the stove."  Stone

Dep. at pp. 27-28.  Thus the location of the tool chest vis-a-vis the stove is critical and this poses a

genuine issue of fact.  There is a genuine issue of fact as to whether Gonyo saw the plastic tool chest

next to the stove or should have seen it in order to perceive the danger and, if so, then act

accordingly.  There is yet another material issue of fact which pertains to the origin of the fire: The

Fire Chief opined that the fire originated near the roof, whereas, Ware, Allstate's expert, opined that

the initiation point was the tool chest.  The origin of the fire is crucial in terms of Allstate's burden

to show that Gonyo's purported breach of his duty of care proximately caused the damages

sustained.  Consequently, because of these disputed issues of fact, Gonyo's Motion, on this ground,

is **denied**.

### C. Spoliation

As a second reason as to why the Complaint should be dismissed, Gonyo charges Allstate

with Spoliation of critical evidence, the Cabin itself.  *See* Dkt. No. 13, Def.'s Ans. with

Counterclaim at ¶ 29, Eighth Affirmative Defense. Gonyo contends that he was not notified that he

was  suspected of causing the fire until April 12, 2006, five months after the fire and after Allstate

had demolished the Cabin.  Since Allstate demolished the fire scene prior to Gonyo exercising his

right to inspect, Gonyo claims that Allstate failed to preserve evidence it knew or should have

known would be relevant to this or any other action.  By neglecting to give Gonyo prompt notice

of his potential liability in order to afford him and/or his representatives an opportunity to view and inspect the fire scene, and in failing to honor its legal responsibility to preserve evidence, Gonyo argues that Allstate's Complaint should suffer the ultimate sanction, dismissal.

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.*, 473 F.3d 450, 457 (2d Cir. 2007) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).  The obligation to preserve evidence of this nature occurs when a party has notice or knowledge or should have known that the evidence may be relevant in future litigation. *Fujitsu Ltd. v Fed. Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001).  If there is a finding that a party has failed to uphold its duty to preserve evidence, "[t]he determination of an appropriate sanction, if any, is confined to the sound discretion of the trial judge . . . and is assessed on a case-by-case basis." *Id.* at 436 (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779 & *United States v. Grammatikos*, 633 F.2d 1013, 1019 (2d Cir. 1980); *see also Reilly v. Natwest Mkts. Group, Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (noting that the case-by-case approach "seems to be working").

Notwithstanding a court's wide latitude in determining an appropriate sanction for spoliation, the Second Circuit reminds us that the applicable sanction should be molded "to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine." *Beers v. Gen. Motors Corp.,* 1999 WL 325378, at *3 (N.D.N.Y. May 17, 1999) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779).  That is,

> [t]he sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore "the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party."

*-13-*

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

Sanctions can range from dismissal of the complaint to rendering an adverse inference instruction to the jury.  Dismissal of the complaint would be appropriate if the spoliation was done with "wilfulness, bad faith, or fault on the part of the sanctioned party."  *Dahoda v. John Deere Co.*, 216 Fed. Appx 124, 125 (2d Cir. 2007) (quoting *West v. Goodyear Tire & Rubber Co.,* 167 F.3d at 779).  However, dismissal is a "drastic remedy" and "should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions."  *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779.  On the other hand, a "finding of bad faith or intentional misconduct is not a *sine qua non* to sanctioning a spoliator with an adverse inference instruction."  *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d at 268.  An adverse inference instruction can be based upon gross negligence.  *Id*.  Hence, if a party had an obligation to preserve evidence, "the degree of that party's culpability and the amount of the prejudice caused by its actions will determine the severity of the sanctions to be imposed."  *Henkel Corp. v. Polyglass USA, Inc.*, 194 F.R.D. 454, 456 (E.D.N.Y. 2000).

Gonyo maintains that dismissal of the Complaint is the only remedy because the inspection of the fire scene would have been critical to his defense in this matter, which is now irreparably lost..  However, based upon the record before this Court, we decline to impose the nuclear option of dismissal for several reasons.  Notably, there are less drastic alternatives that would meet the prophylactic purpose of sanctions.  Furthermore, the current record does not establish that the spoliation was conducted in bad faith or wilfully.  Although presently Allstate's conduct does not appear to rise to the level of wilfulness, bad faith, or intentional, the demolition and its ensuing consequences to Gonyo are disquieting and troublesome.  If indeed spoliation has occurred, which

*-14-*

could have denied Gonyo of a viable defense, other alternative sanctions such as giving the jury an adverse inference instruction would be appropriate.

Yet, the Court agrees with Allstate that, based upon our record, the issue of spoliation poses questions of fact.  The most prominent and material issue of fact is the date when the Cabin was actually demolished.  No such date is reflected in the record, though Gonyo supposes that it occurred prior to April 12, 2006.  Insurance Agent Koban testified that he does not rightly know the date when the actual demolition of the Cabin occurred, Koban Dep. at p. 23, and no other witness nor documents have been submitted advising us as to when that event may have transpired.  All that we know from this record is that upon receiving Ware's report, on or about November 17, 2005, Allstate was aware that Gonyo was suspected of causing this fire.  Def.'s 7.1 Statement at ¶ 18; Pl.'s 7.1 Statement at ¶ 18. On April 12, 2006, Allstate sent a letter to Gonyo noting that he may be a target of a lawsuit arising out of this fire.  7.1 Statements. at ¶¶ 19-21.  We further know that Jerry Knapp who performed the demolition faxed an invoice to Koban on June 19, 2006.  Dkt.No. 48, Ex. H, Invoice.  Conspicuously absent from the invoice and the fax is a date as to when the demolition actually occurred, lending to another reasonable inference that the demolition may not have occurred until after the April 12, 2006 Letter.  Compounding our factual dispute is the fact that MetLife, Gonyo's insurer, sent a letter to Allstate on April 18, 2006, which states, in part, the following:

> MetLife Auto and Home Insurance Company has concluded their investigation of this claim. . . . As a result of our investigation, we have found there to be no negligence on behalf of our insured.  Instead, we believe that the cause of this loss to be undetermined. . . . In addition we have been informed that the most likely cause was ignition of the cabin in the location where the stove pipe passed through. . . . Currently, however, our position is as indicated, the actual cause of the loss was undetermined and our insured was not negligent in any way so we had not considered subrogation feasible.  In light of your correspondence we will pull our file and reevaluate this position.

Dkt. No. 48-2, Ex. I, MetLife Lt., dated Apr. 18, 2006.

*-15-*

Any reader can reasonably draw several inferences from this letter.  One inference is that MetLife had an opportunity and did in fact conduct an investigation, arriving at a conclusion that its insured did not cause the fire nor was negligent.  Another inference, which may be more damaging to the claim of spoliation, is that MetLife, on behalf of Gonyo, did not seek nor preserve a right to inspect, in the event the Cabin was not razed as of that date.   In another spoliation case, *Allstate Insurance Company v. Hamilton Beach Proctor Silex, Inc.*, the Second Circuit affirmed the district court's refusal to impose sanction because the defendant did not ask to inspect the evidence at issue and also astutely noted that the obligation to preserve may not continue "indefinitely."  473 F.3d at 458.  It is also reasonable to infer that possibly MetLife disclaimed any interest in the evidence since it had already arrived at the conclusion that Gonyo was not negligent.  MetLife's failure to ask for an inspection could have played some role in the demolition of the Cabin, if such event had not occurred until after April 18, 2006, and such a role will have a significant bearing as to whether a sanction is appropriate and to what extent.

Another factor for us to consider not only as to whether sanctions are appropriate, but the degree of those sanctions, is that Gonyo, with the assistance of Fire Chief Hanslmaier, inspected the premises immediately after the fire.  At such time, Hanslmaier rendered an opinion, of which Gonyo is now relying upon for his defense, that the fire started in the stove near the roof line and not near the stove.  Moreover, Allstate and Stone took pictures of the Cabin immediately after the fire, and presumably, Gonyo has copies of those pictures.  Because Gonyo has a report from an expert and has been provided photographs that depict the fire and its origin, Allstate posits that Gonyo is not prejudiced and his defense has not been imperiled.  This same argument was presented in *Henkel Corp. v. Polyglass USA, Inc*.  However, the *Henkel* court observed that notwithstanding the presence

-16-

of photographs of the fire, "the evidentiary playing field between the two parties is clearly not level." 194 F.R.D. at 457.  If Gonyo's claim of spoliation is true, then the evidentiary playing field is decidedly tilted in favor of Allstate, notwithstanding the presence of another competing expert report and photographs.  But the gravity of that tilt is yet to be determined.  The evidence here is far from conclusive as to whether Gonyo was indeed prevented a reasonable opportunity to inspect the fire scene.  We have a question of fact, which must be resolved before this Court can consider any form of sanction.  Accordingly, the trial of this matter will also include these disputed facts.

### III.  CONCLUSION

For the reasons stated above, both of Gonyo's grounds to dismiss the Complaint shall be denied.  There are material issues of facts as to liability and spoliation.  Accordingly, it is hereby Ordered that Gonyo's Motion to Summary Judgment, Dkt. No. 44, is **DENIED.**[11]

---

[11]  Still pending before this Court is Plaintiff's *Daubert* Motion, pursuant to FED. R. CIV. P. 702 and *Daubert v. Merrill-Dow Pharmaceuticals*, 509 U.S.579 (1993), seeking to preclude Fire Chief George W. Hanslmaier from providing expert opinion testimony. Dkt. No. 39.  The *Daubert* Motion will be decided before the Court sets a trial ready date and a trial date.

**IT IS SO ORDERED**.


Date:    April 8, 2009
         Albany, New York




RANDOLPH F. TREECE
United States Magistrate Judge