**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ALLSTATE INSURANCE COMPANY *as subrogee*
*of Thomas Lothridge*,

                                        Plaintiff,

                - v -                                    Civ. No. 8:07-CV-1011
                                                                    (RFT)

ALBERT GONYO,

                                        Defendant.

**APPEARANCES:**                              **OF COUNSEL:**

COZEN, O'CONNOR LAW FIRM          DANIEL J. LUCCARO, ESQ.
*Attorney for Plaintiff*
1900 Market Street, 3rd Floor
Philadelphia, Pennsylania 19103

OFFICE OF DANIEL W. COFFEY          DANIEL W. COFFEY, ESQ.
*Attorney for Defendant*
119 Washington Avenue, 2nd Floor
Albany, New York 12210

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM DECISION and ORDER**

        In seeking summary judgment dismissing this fire subrogation Complaint, Gonyo raised a

two pronged attack, the latter of which asserted spoliation of evidence.  Dkt. No. 44, Def.'s Mot. for

Summ. J, dated Oct. 3, 2008.  The crux of this spoliation assertion was that critical evidence, the

fire-damaged cabin, was destroyed before Gonyo had an opportunity to have an expert conduct an

investigation as to the origin of the fire, thus depriving him of a viable defense.  The origin of the

fire is a critical linchpin in this case.

        This Court issued a Memorandum-Decision and Order (MDO) denying Gonyo's Motion for

Summary Judgment, and addressing, to some degree, the spoliation doctrine.  Dkt. No. 52, Mem.-

Dec. & Order, dated Apr. 8, 2009, at pp. 12-17.  Succinctly, based upon the record, this Court found

that the issue of spoliation in this case posed a question of fact, "the most prominent and material issue of fact [being] the date when the cabin was actually demolished." *Id.* at p. 15.  If the destruction of the cabin occurred prior to April 12, 2006, the date when Gonyo received official notice from Allstate that his conduct in lighting the cabin's wood burning stove caused the conflagration, a significant issue would have been created in that he was not provided an opportunity to have an expert of his choosing investigate the origin of the fire.  Conversely, if the razing of the damaged cabin occurred after this correspondence, there would be a strong inference that Gonyo had an opportunity to inspect with the assistance of an expert but either declined to pursue it or failed to make the request.  Consequently, the Court stated that we have a question of fact, which must be resolved before the Court could consider any form of sanction.  *Id.* at p. 17.  However, since the Court did not find in the record any wilfulness or bad faith in the destruction of the cabin, the Court immediately declined "to impose the nuclear option of dismissal[,]" *id.* at p. 14, leaving all other conceivable sanctions, including an adverse inference instruction, in play to rectify any finding of spoliation.

Within days after the MDO was issued, Gonyo served upon Allstate several Requests for Admissions, to which Allstate objected as being untimely and in violation of this District's Local Rule 16.2.  The Court convened a telephone conference on May 1, 2009, to address this disagreement.  The Court found that Gonyo had established good cause to serve requests to admit that spoke to whether the cabin was demolished or most of the fire debris had been removed prior to April 12, 2006, a pivotal fact in our spoliation analysis. Dkt. No. 58, Order, dated May 1, 2009. Further, the Court directed the parties to submit legal memoranda addressing whether the factual issues regarding spoliation should be handled prior to or during the jury trial. *Id.* at p. 2. Pursuant

to this directive, both parties have respectfully filed a letter-memorandum. Dkt. Nos. 60, Def.'s Lt.-Br., dated June 4, 2009, 62, Pl.'s Lt.-Br., dated June 5, 2009, & 63, Def.'s Reply Lt.-Br., dated June 8, 2009.

The only issue to which both parties concur is that the Court should resolve the factual issues surrounding spoliation and what sanction, if any, should be imposed in advance of the jury trial. *See* Dkt. Nos. 60 at p. 6, & 62 at p. 1. The Court accepts their concurrence.

## A.  ADDITIONAL FACTS

The parties' familiarity with the facts are presumed. *See* Dkt. No. 52, Mem.-Dec. & Order at pp. 2-6. Nonetheless, both parties submitted with their respective Letter-Briefs additional facts, the most salient being Allstate's recent Admissions.[1] Dkt. No. 60-2, Pl.'s Admits. It is now confirmed that the subject fire-damaged cabin was razed and all of the debris removed prior to April 12, 2006. *Id*. Furthermore, we now know that Dennis Ware, Plaintiff's expert, did not preserve any evidence nor play any role, or have any say, on whether the fire-damaged cabin would be preserved for Gonyo's inspection. *See generally* Dkt. No. 60-3, Dennis Ware Dep., dated May 21, 2009 (excerpts). Yet, when questioned by Allstate's attorney, Ware opined that an expert could determine the cause of a fire solely by looking at the photograph, absent a visit to the scene, and such documentation and analysis remains available in this case. Dkt. No. 62, Ex. C, Ware Dep. (excerpts) at pp. 98-99.

In the MDO, the Court stated that the issue of spoliation posed a question of fact. Dkt. No. 52 at p. 15. In our view, at that time, it was "far from conclusive as to whether Gonyo was indeed

---

[1]  Some of the additional evidence can be found in docket numbers 60-2, Plaintiff's Admissions; 60-3, Dennis Ware's Deposition, dated May 21, 2009 (excerpts), 62, Exhibits A-C (various documents including excerpts of Ware's Deposition), 63-2, Albert Gonyo's Deposition, dated April 17, 2008 (excerpts), and 63-3, Dennis Ware's Deposition (excerpts).

prevented a reasonable opportunity to inspect the fire scene." *Id*. at p. 17. We further stated that if sanctions are appropriated, the degree of those sanctions warranted further consideration. *Id*. at p. 16. Weighing the additional facts, the Court is now in a position to rule on spoliation and sanctions.

## B. ANALYSIS

Even though the Court discussed in detail the law pertaining to spoliation, it deserves reiteration that "spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *In re Terrorist Bombings of United States Embassies in East Africa*, 552 F.3d 93, 148 (2d Cir. 2008) (quoting *Allstate Ins. Co. v. Hamilton Breach/Proctor Silex, Inc*., 473 F.3d 450, 457 (2d Cir. 2007) (citation omitted)). The obligation to preserve evidence "arises when the party has notice that the evidence is relevant to the litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp*., 247 F.3d 423, 436 (2d Cir. 2001). In fire cases, the National Fire Protection (NFPA) standard 921, section 4.4.4 requires fire evidence to be preserved for further testing and courtroom purposes. Dkt. No. 41-10. Key to the duty to preserve is knowing when it attaches. In our case, the duty could have attached on the day after the fire, November 15, 2005, or probably after Allstate's expert Dennis Ware had inspected the destroyed premises, but certainly after Allstate's decision to pursue Gonyo to recover for the damages.

Based upon these new revelations that the cabin was razed or substantially renovated prior to April 12, 2006, as well as those facts previously disclosed, the clear implication is that Gonyo, who was unaware that he would be a potential litigant in this case until April 12, 2006, was unable

to hire a fire expert of his choosing to <u>inspect</u> the premises in order to determine the origin of the fire.  Whether the destruction of material evidence in this case was caused through malfeasance or misfeasance is of no critical moment.  It is clearly established that spoliation has occurred at the hands of Allstate.

Anticipating that there may be a finding of spoliation, Gonyo renews his quest for summary judgment.  Dkt. No. 60 at pp. 4-6.  The Court remains steadfast that a dismissal of the actions under these circumstances is too drastic and extreme a remedy and does not appropriately "serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."  *West v. Goodyear & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).  That is,

> [t]he sanction should be designed to: (1) deter parties from engaging in spoliation;
> (2) place the risk of an erroneous judgment on the party who wrongfully created the
> risk; and (3) restore "the prejudiced party to the same position he would have been
> in absent the wrongful destruction of evidence by the opposing party."

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779 (citing *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998)).

 When pursuing sanctions, our primary task, at this juncture, is to restore the innocent party to the same position he would have had if the evidence had not been destroyed.  *Kronisch v. United States*, 150 F.3d at 126 ("The task is unavoidably imperfect[.]").  Dismissal of the action goes beyond restoring the prejudiced party, Gonyo, to a level playing field and thus we reject his invitation to do so.  Nonetheless, there is a range of other sanctions to be considered and this Court previously intimated in the MDO that an adverse inference instruction may serve that primary purpose.  Dkt. No. 52 at p. 14.  However, we also embrace the prudential instruction that "the adverse inference instruction is an extreme sanction [as well] and should not be given lightly."  *Zubulake v. UBS Warburg*, LLC, *IV*, 220 F.R.D. 212, 220 (S.D.N.Y. 2003).

With this lesson clearly in mind, the Court notes that

> a party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed "with the culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (quoting *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 107-12 (2d Cir. 2001)).

Based upon the discussion above, the Court easily dispenses with the first element of this test. Allstate had control of this meaningful evidence and failed to abide by its duty to preserve.

Next, the Court must determine whether Allstate had the culpable state of mind to warrant an adverse inference instruction. The Second Circuit has debated for nearly a decade the degree of culpability necessary to justify such an extreme sanction. It had long been held that a party's intentional destruction of relevant proof supports this unfavorable inference. *Kronisch v. United States*, 150 F.3d at 126. Subsequently, the Circuit confirmed that bad faith and gross negligence were sufficient grounds to invoke the adverse inference. *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93. Yet realizing that there are various levels of state of mind that may come into play, and further recognizing the imperfect nature of determining when such a sanction should be invoked, the Second Circuit apprises courts that a case by case approach is warranted. *Id.* at 108 (citation omitted). And, after performing a comprehensive analysis of the issue, the Second Circuit recently found that ordinary negligence, in some circumstances, may be a sufficient state of mind for an adverse inference instruction. *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d at 108 & 113; *Port Auth. Police Asian Jade Soc'y of New York & New Jersey Inc. v. Port Auth. of New York and New Jersey*, 601 F. Supp. 2d 566, 578 (S.D.N.Y. 2009); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 121 (S.D.N.Y. 2008) (citing *Residential Funding*, 306 F.3d at 108). Here, the Court previously observed that the record did not reflect that the spoliation was conducted in bad faith or

wilfully, and our assessment has not changed. Dkt. No. 52 at p. 15. However, the revised record clearly establishes that Allstate was more than negligent and indeed, taking into significant consideration the NFPA standards, acted recklessly. *Byrnie v. Town of Cromwell*, 243 F.3d at 108 (noting that other courts have held that the destruction of evidence in violation of regulations that required retention can give rise to an inference of spoliation). In this respect, Gonyo has established the culpable state of mind allowing the interposition of an adverse inference instruction. The Court now turns to the third prong, the element of relevance.

Relevance in the context of an adverse inference instruction is something more meaningful than the definition found in Federal Rule of Evidence 401:

> Rather, the party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that "the destroyed [or unavailable] evidence would have been of the nature alleged by the party affected by its destruction." *Kronisch,* 150 F.3d at 127; *Byrnie,* 243 F.3d at 110. Courts must take care not to "hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence," because doing so "would subvert the . . . purposes of the adverse inference, and would allow parties who have . . . destroyed evidence to profit from that destruction." *Kronisch,* 150 F.3d at 128; *Byrnie,* 243 F.3d at 110.

*Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d at 109 (quotations and alterations in original).

Gonyo must demonstrate that debris from the fire scene, which is the destroyed evidence, has some relevance in substantiating his defense and that a reasonable trier of fact could draw an inference to find that the missing evidence would help support him. *Byrnie v. Town of Cromwell*, 243 F.3d at 107-12; *Kronisch v. United States*, 150 F.3d at 127 & 129. Since Allstate's destruction of the fire-damaged cabin is no longer in dispute, had it acted in bad faith, those actions would be sufficient circumstanial evidence by themselves for a reasonable jury to draw such an inference. *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d at 109. "Similarly, a showing of gross negligence

-7-

in the destruction . . . of evidence will in some circumstances suffice, standing alone, to support a

finding that the evidence was unfavorable to the grossly negligent party" or stated another way, "that

same evidence of the opponent's state of mind frequently will also be sufficient to permit a jury to

conclude that the missing evidence is favorable to the [moving] party (satisfying the "relevance"

factor)." *Id.*  When the destruction appears to be caused by negligence, the corroboration of

relevance becomes more necessary. *Treppel v. Biovail*, 249 F.R.D. at 122.  However, the Second

Circuit did not want courts nor parties to misunderstand the limitation of a ruling on relevance and

an adverse inference charge:

> Although the issue of whether evidence was destroyed with a "culpable state of
> mind" is one for a court to decide in determining whether the imposition of sanctions
> is warranted, whether the materials were in fact unfavorable to the culpable party is
> an issue of fact to be determined by the jury.  *Byrnie,* 243 F.3d at 109-10.
> Accordingly, a court's role in evaluating the "relevance" factor in the adverse
> inference analysis is limited to insuring that the party seeking the inference had
> adduced enough evidence of the contents of the missing materials such that a
> reasonable jury *could* find in its favor.  *Id.*

*Residential Funding Corp. v. Degeorge Fin.* Corp., 306 F.3d at 109 n.4 (quotation marks and
emphasis in original).

Considerable debate has ensued between the parties as to whether Gonyo has in fact adduced

sufficient evidence to confirm that he was prevented a reasonable opportunity to inspect the fire and

present a viable defense.  Within the framework of this disputation, Allstate posits that Gonyo

cannot show that he has been prejudiced or adversely affected. Dkt. No. 62 at p. 3.  If there is no

or nominal prejudice, the likelihood of an adverse inference instruction becomes nil and lesser

sanctions should be considered. *Residential Funding*, 306 F.3d at p. 112.  Gonyo claims that he was

adversely affected by the destruction inasmuch as he was not able to retain an expert to determine

if the origin of the fire differs from Allstate's expert's findings.  His position has always been that

the building had been razed prior to knowing that he was the target of a lawsuit, which ultimately denied him a reasonable opportunity to inspect the property.  All of this has been corroborated by Allstate's Admissions.  Further, supporting his contention that the lost expert proof would have been favorable, Gonyo refers the Court to the town of New Berlin Fire Chief George Hanslmaier's opinion that the fire originated in the chimney near the roof eaves and not in proximity of the cabin's wood stove.  Accordingly, Gonyo argues that another expert could have found similarly.

In mitigation, Allstate asserts that Gonyo's defense has not been compromised by referring to Gonyo's reliance upon the expert testimony to be given by Fire Chief Hanslmaier, a Level One Certified Fire Investigator, who obviously disagrees with Ware's assessment.[2]  Next, Allstate contends that Gonyo and his insurer never made an overture to inspect the premises and in fact decided against it on April 18, 2006.  And lastly, because the fire damage was extensively photographed, Allstate posits that an expert could view this evidence to either refute or corroborate the origin of the fire.  *See* Dkt. No. 62 at pp. 3-5 (relying upon Dennis Ware's Dep.).

The Court is not persuaded by Allstate's arguments.  As to the proposition that Gonyo never sought an official inspection of the fire, such argument is irrelevant.  Gonyo would not have had a reason to even contemplate the need for such an inspection prior to the April 12, 2006 letter. Moreover, razing the structure prior to that notification would have nonetheless rendered any request to inspect moot.  And contrary to Allstate's postulation, reliance solely upon an expert review of photographs to determine the origin of fire remains debatable, and thus unpersuasive.  *See Henkel Corp. v. Polyglass USA, Inc*., 194 F.R.D. 454, 455-56 (E.D.N.Y. 2000).

---

[2]  The Court finds it ironic that Allstate, who initially filed a Motion to Preclude Hanslmaier's expert testimony, now raises his testimony as extenuation for destroying the fire-damaged scene prior to notifying Gonyo of his potential liability, and to minimize the degree of prejudice which has befallen Gonyo.  Dkt. No. 39.  By a Memorandum-Decision and Order, dated Apr. 29, 2009, the Court denied Allstate's Motion to Preclude.  Dkt. No. 57.

The Court accepts the proposition that the fire-damaged property had relevant content for this case. Based upon the present record, it is reasonable to conclude that a jury could reasonably find the absent expert proof favorable to Gonyo. In light of the degree of carelessness and recklessness in preserving the fire scene for an inspection, the Court finds, weighing the policy aims of the spoliation doctrine, that an adverse inference charge instructing the jury that it may infer from Allstate's razing and removal of fire debris that the evidence from the fire scene would have been unfavorable to it, or conversely favorable to Gonyo, is warranted. To be clear, these inferential issues remain within the jury's province.

Allstate further argues that if the Court grants Gonyo an adverse inference instruction, it should still be entitled to present evidence to demonstrate the reasonableness of its decision to demolish the fire scene. This point is not seriously challenged by Gonyo, however, he comments that such proof is not available to contradict whether he was prejudiced or the level of prejudice foisted upon him but rather the reasonableness of Allstate's actions to demolish; the matter of prejudice resides with the Court. Gonyo states the proposition of law correctly, that is Allstate remains free at trial to proffer an explanation for the removal of the debris or its failure to timely notify Gonyo. *See* N.Y. PATTERN JURY INSTR. 1:77.1. In this regard, Allstate wants to place into evidence Gonyo's and his insurer's (MetLife) knowledge of the fire and MetLife's April 18, 2006 Letter stating in essence that it would not pursue any inspection of the fire scene. If this letter is allowed into evidence, there is the grave likelihood that Gonyo's insurance coverage would be unfairly, and possibly injuriously, transmitted to the jury. Insurance coverage evidence is generally excluded from a jury's purview:

> Evidence that a person was or was not insured against liability is not admissible upon
> the issue whether the person acted negligently or otherwise wrongfully. This rule

> does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

FED. R. EVID. 411.

The Court accepts that Allstate's stated intent not to interpose Gonyo's insurance information for the purpose of establishing negligence or fault. Rather, in Allstate's view, such information could "show the reasonableness of [its] assumption [Gonyo] did not want to examine the fire scene[.]" Dkt. No. 62 at p. 7. However, the perilous consequence of mentioning insurance or an insurance carrier gravely concerns the Court. The presentation of insurance coverage and/or insurance agent can easily derail the case towards a mistrial, and event this Court eschews. Because the Court does not find Allstate's cited cases convincing nor has the Court found any precedent on point to support Allstate's position, the safe course in this delicate arena would lead us to preclude any mention of Gonyo's insurance company and/or coverage. To deny Allstate from mentioning Metlife would not necessarily prevent it from presenting the reasonableness of its actions and decisions. If necessary, reference to Gonyo's and his insurer's actions as solely Gonyo's actions and decisions would be the best course. Accordingly, no direct reference to Metlife will be permitted.

## C. CONCLUSION

Based upon all of the foregoing, the Court will deliver an adverse inference instruction in this case. In giving this adverse inference instruction, this Court has not yet resolved at this juncture whether it will follow verbatim N.Y. PATTERN JURY INSTR. 1:177.1 or the instructions used in *Zubulake v. U.B.S Warburg LLC, V*, 229 F.R.D. 422 (S.D.N.Y. 2004). Finally, Allstate is precluded from mentioning Metlife at trial.

**IT IS SO ORDERED**.

July 1, 2009
Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge